*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0007P (6th Cir.)
File Name: 00a0007p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

GARY WALSH,
    *Plaintiff-Appellant,*

    *v.*                                    No. 98-6466

UNITED PARCEL SERVICE,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 96-00676—James D. Moyer, Magistrate Judge.

Argued: November 2, 1999

Decided and Filed: January 6, 2000

Before: KENNEDY and RYAN, Circuit Judges;
CLELAND, District Judge.[*]

———————

**COUNSEL**

**ARGUED:** David G. Torchia, TOBIAS, KRAUS & TORCHIA, Cincinnati, Ohio, for Appellant. Tony C.

———————

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

Coleman, BROWN, TODD & HEYBURN, Louisville, Kentucky, for Appellee. **ON BRIEF:** David G. Torchia, TOBIAS, KRAUS & TORCHIA, Cincinnati, Ohio, for Appellant.    Matthew R. Westfall, Jr., WESTFALL, TALBOTT & WOODS, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

   KENNEDY, Circuit Judge.    Plaintiff Gary Walsh (plaintiff) worked as a management pilot for United Parcel Service (defendant or UPS).   In 1993 plaintiff went on disability leave due to complications stemming from an earlier car accident.  Approximately five months after his year of paid medical leave ended, plaintiff was terminated. Defendant claims the termination was solely due to plaintiff's failure to provide information concerning his disability status and ability to return to work.  As a result of his termination, plaintiff brought this action against defendant, claiming violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., Kentucky's equivalent provision, Ky. Rev. Stat. Ann. § 344.040, and § 510 of ERISA, 29 U.S.C. § 1140. The district court granted summary judgment in favor of UPS on all claims brought by plaintiff and plaintiff appealed.  For the reasons set forth below, we AFFIRM the district court's decision.

### I. Facts

   Plaintiff Gary Walsh worked for United Parcel Service as a management pilot.  In November of 1991, plaintiff was involved in an automobile accident in which his wrist was broken and his spine was fractured.  He returned to work in January of 1992 and continued to work until UPS removed him from flight status in November of 1993.  Plaintiff concedes that at the time UPS made this decision, his memory was poor, his hand eye coordination had declined and he could not think as clearly as before the car accident. Plaintiff acknowledges that his ability to function as a commercial

airline pilot was impaired and raises no argument against defendant's conclusion that he should no longer be flying.

On January 10, 1994, defendant received a neuropsychological evaluation from plaintiff's doctor which stated, "My recommendation would be for a two-or-three-month medical leave of absence to address physical issues, obtain counseling support and become more physically and emotionally stable." After defendant received this evaluation it had Aviation Medical Examiner Dr. Stephen Wright examine plaintiff as well. Dr. Wright agreed that a medical leave of absence would be the best course of action. Based on these diagnoses, defendant placed plaintiff on medical leave in February of 1994, continuing his salary through the company's salary continuation plan. Plaintiff ultimately remained on paid leave until March 1, 1995, receiving a total of $152,716.

During plaintiff's medical leave Dr. Christopher Lawrence acted as plaintiff's primary treating physician. Doctor Lawrence initially believed that plaintiff's major problem was fatigue. As a result, he started plaintiff on Prozac and indicated that if things went well he hoped that plaintiff could return to his job in approximately three months. On June 23, 1994, Dr. Lawrence sent an update of plaintiff's condition in which he indicated that plaintiff was improving both physically and mentally. Dr. Lawrence noted that he planned to see plaintiff in four weeks to evaluate whether he was ready to work and stated, "[a]t this rate, I anticipate that he will be ready for a restricted return to work on a limited hour basis."

On August 12, 1994, Paula Shearer (Shearer), UPS's medical manager, sent plaintiff a letter informing him that he was scheduled for a physical on August 16 with Dr. Wright. Dr. Wright performed a general company physical and sent a letter to Shearer indicating that plaintiff's main complaint of extreme fatigue continued. Dr. Wright also noted that plaintiff declined his offer to perform an FAA physical because plaintiff knew he would not pass while he continued taking Prozac. Dr. Wright stated that he advised plaintiff that

he would need statements from all of plaintiff's treating physicians acknowledging that plaintiff was able to return to work before he could clear him to do so.

On December 7, 1994, Shearer sent a letter to both plaintiff and Dr. Lawrence requesting information on plaintiff's work restrictions, projected return to work date, and treatment plans. The letter also indicated that work that didn't require an active FAA medical certificate was available in the Louisville office and asked that the requested information be provided as soon as possible.    UPS needed new documentation from plaintiff, as corporate policy only allowed salary continuation for a period of twelve months without new documentation.  As a result, Shearer made additional requests on December 22, 1994 and January 5, 1995 for plaintiff to fill out and return the disability form mentioned in her December 7th letter.

Plaintiff did eventually give Dr. Lawrence a disability form to fill out and send in to UPS, but could not recall how or when it was sent.  Dr. Lawrence mailed the form sometime in January, but failed to provide a return to work date and only certified that plaintiff was disabled "from February 1, 1994 through present."  Dr. Lawrence signed the form and dated it January 5, 1995.  When Shearer called Dr. Lawrence on February 6, 1995, regarding plaintiff's disability, Dr. Lawrence apparently indicated that he could not provide any further information as he had not seen plaintiff since December 9, 1994.  Shearer also called plaintiff on February 6 to notify him that the form was incomplete.

On February 13, 1995, Shearer sent plaintiff another blank disability form and advised him that it needed to be completed in order for him to continue his leave.  On March 15, 1995, UPS Human Resource Manager Jan Toronzo (Toronzo) wrote plaintiff, pointing out that he had declined to take an FAA first class medical exam, which she stated "was scheduled to determine your ability to perform the functions of your current position as management captain or your ability to return to work in a non-flight position."  Toronzo further

concerning plaintiff's disability status and accommodations required, and plaintiff never provided this information.

The only other evidence that plaintiff relies on are facts advanced in his attempt to state a prima facie case against defendant under ERISA § 510.  Accordingly, plaintiff has not shown evidence of pretext that would permit a reasonable juror to conclude it overwhelms the nondiscriminatory reasons UPS advanced for firing him. *See Manzer*, 29 F.3d at 1084.

Having failed to produce evidence from which a reasonable jury could conclude that UPS's legitimate non-discriminatory reason for terminating him was pretextual, plaintiff's ERISA § 510 claim was properly disposed of by the district court on summary judgment.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to defendant regarding all claims brought by plaintiff.

requested. Plaintiff's argument appears to largely be that under the circumstances it was unfair for defendant to terminate him. However, the question is not whether it was fair for defendant to terminate him, or whether defendant could have considered less drastic alternatives. Rather, the only question is whether plaintiff's conduct gave defendant a sufficient non-discriminatory reason to fire him. Consequently, plaintiff has not shown that a reasonable jury could conclude that defendant advanced an insufficient basis for terminating him.

Finally, plaintiff states that the case is ultimately about defendant's motive. In discussing motive, plaintiff is trying to indirectly attack the credibility of defendant's proffered explanation for terminating him.[6] However, to successfully show that a termination was motivated by impermissible considerations, rather than the non-discriminatory reasons advanced by the employer, an employee must come forward with evidence other than that used to established his or her prima facie case. *See Manzer*, 29 F.3d at 1084-85. In this regard, plaintiff alleges that defendant previously claimed that it needed additional information about plaintiff's condition, but now claims that it only needed to know whether or not he was disabled and what jobs, if any, he would be able to perform. Assuming this to be true, this is not the type of conflict in testimony that would preclude summary judgment. *Cf. Tinker v. Sears Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997) (finding that the completely inconsistent reasons advanced by several individuals to explain plaintiff's firing indicated the presence of an issue of material fact). It is undisputed that UPS consistently requested information

---

[6]Although he does not state so, plaintiff is apparently arguing in the alternative. When a plaintiff claims that the reasons the employer advanced for firing him or her did not actually motivate the termination, "the plaintiff admits that the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate the dismissal." *See Manzer*, 29 F.3d at 1084. This is necessarily so because the employee is arguing that the legitimate reasons the defendant advanced for the termination weren't the actual motivating reasons.

stated in her letter that salary continuation could not be approved due to plaintiff's failure to provide appropriate medical documentation. As a result, she advised plaintiff that his salary continuation was being discontinued effective March 1, 1995.

On March 23, 1995, Toronzo met with plaintiff to discuss medical documentation, any limitations on his ability to work, and the possibility of a new job assignment. Both plaintiff and UPS were represented by counsel at this meeting. At the meeting plaintiff provided a disability form signed by a Dr. Vengrow. Dr. Vengrow listed plaintiff's disability dates and return to work date as "unknown." Toronzo told plaintiff that the form was unacceptable, and they apparently agreed that additional time would be allowed for Dr. Lawrence to furnish the necessary information. The deadline agreed upon appears to have been May 8, 1995. Although UPS compiled a list of available non-flying jobs prior to its meeting with plaintiff, UPS never reviewed the list with him, apparently because he attended the meeting without the return to work release that the company had anticipated.

Following the meeting, Shearer sent a letter to Dr. Lawrence on March 27, 1995, requesting information regarding plaintiff's condition, ability to return to work, and medical treatment. Dr. Lawrence responded on March 29, 1995, indicating that he felt plaintiff was stable objectively, but that subjectively plaintiff felt that he couldn't go back to his old job as a pilot. Dr. Lawrence noted that plaintiff complained of persistent fatigue and chronic pain and was ineligible to return to work as a pilot, but he stated that he was offering no active treatment and expected no significant change in his condition over the next twelve to eighteen months. As the district court observed, "[the] letter did not offer a diagnosis, did not release plaintiff to return to work, did not identify a disability, and did not point out any potential accommodations which would allow plaintiff to function either as a pilot or in any other UPS position."

On April 11, 1995, Shearer sent Dr. Lawrence another letter, requesting a summary of treatment, ability to return to work, tentative return date, limitations and restrictions required, and recommendations for future medical evaluation. Plaintiff received a copy of this letter as well. Apparently in response, a letter from Dr. Vengrow was sent to UPS on April 28, 1995. In his sixty word letter Dr. Vengrow indicated that he could not diagnose a neurologic problem and concluded that it was beyond the realm of his expertise to suggest that plaintiff should not be currently working. Dr. Vengrow stated that the appropriate specialty should be consulted and noted that he had referred plaintiff to the Mayo Clinic.

Plaintiff never visited the Mayo Clinic as the insurance carrier refused to authorize the expense. UPS scheduled plaintiff for an independent medical evaluation with an orthopedic surgeon on May 16, 1995, to determine what work plaintiff could perform and what medical restrictions would be required. Plaintiff canceled, however, stating that he had jury duty. Toronzo then sent plaintiff a final letter on May 26, 1995, detailing the requests for information that UPS had made over the last six months and concluding, "I will allow you another week to provide this information, but you must know if I have not received appropriate documents by June 5, 1995, your continued employment with United Parcel Service will cease on that date." Plaintiff called on or around June 5 to tell Toronzo that he was currently undergoing evaluation and could not supply the information in time.

On June 6, 1995, defendant sent plaintiff a letter stating that his employment was terminated for failure to provide appropriate medical documentation. Sometime after receiving this letter, plaintiff apparently spoke with James Darwin, an assistant of Toronzo's, about the possibility of going on long term disability. Plaintiff claims he was told that he was no longer eligible because his employment with UPS had terminated. On August 31, 1995, plaintiff sent a letter to Toronzo requesting reinstatement and long term disability benefits. Plaintiff also attached a letter from Dr. Stoff, a homeopathic physician. In the letter Dr. Stoff

discriminatory reason for its actions. The burden then shifts to plaintiff to show either: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock*, 29 F.3d 1078, 1084 (6th Cir. 1995).

Plaintiff argues defendant's reason for discharging him was pretextual because it had no basis in fact. However, plaintiff has come forward with no evidence showing that the basis which defendant advanced for plaintiff's discharge was factually false. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (6th Cir. 1994) (providing that plaintiff must produce evidence from which a rational fact finder could infer that the company lied to have a submissible issue of pretext for the jury). Over a more than six month period, which included multiple phone calls, letters, and a meeting where the parties where represented by counsel, defendant continued to request information relating to plaintiffs disability. Nonetheless, plaintiff failed to supply the requested information. In response plaintiff attempts to argue that he substantially complied, however at no point did he respond to defendant's questions by indicating his disability status or what accommodations he might require. Consequently, plaintiff has not come forth with evidence from which a reasonable jury could find that defendant's reason for terminating plaintiff had no basis in fact.

Plaintiff's claim that his conduct was insufficient to motivate defendant to discharge him is also unsupported by the evidence. To support such a claim, an employee must normally show that other employees who engaged in substantially identical conduct were not discharged by the employer. *See Manzer*, 29 F.3d at 1083. Plaintiff did not produce evidence that defendant refrained from terminating other employees in similar circumstances. Plaintiff instead argues that because he did not wilfully fail to provide the information requested, his conduct was insufficient to warrant dismissal. As support, plaintiff points to the fact that defendant did not have an urgent need for the information it

wouldn't be interested because he would have to terminate his employment. When combined with the timing of his firing, i.e., while he was still under medical evaluation to determine the extent of his disability, plaintiff contends an inference of discriminatory motive is raised.

Plaintiff's evidence of a causal connection between his firing by defendant and a desire on the part of defendant to avoid paying LTD benefits is weak at best. For the purpose of argument, however, we will assume that a prima facie showing has been made, as it is clear that plaintiff has failed to show that defendant's alleged non-discriminatory reason was pretextual. The *Smith v. Ameritech* Court addressed the issue of pretext and how the explanations employers advance for their actions fit within ERISA § 510 analysis, providing:

> If the plaintiff states a prima facie case under § 510, the employer can rebut the presumption of impermissible action raised by the prima facie case by introducing evidence of a legitimate, nondiscriminatory reason for its challenged action. This shifts the burden back to the plaintiff to show that the employer's proffered reason was mere pretext. Although the plaintiff need not show that the employer's sole purpose was to interfere with the plaintiff's entitlement to benefits, he must either prove that the interference was a motivating factor in the employer's actions, or prove that the employer's proffered reason is unworthy of credence. Summary judgment is appropriate if plaintiff fails to establish a prima facie case or fails to rebut the employer's proffer of a legitimate, nondiscriminatory reason for its actions.

*Id.* at 865.

As detailed above, defendant made repeated requests over a six month period for the medical information necessary to keep the plaintiff on medical leave. Defendant also met with plaintiff and plaintiff's counsel to discuss the information needed. Defendant has stated that its sole reason for firing plaintiff was that he failed to produce the requested information. In so stating, defendant has advanced a non-

concluded that plaintiff was disabled from his profession and predicted that it would be one to three years before he could return to working as a commercial pilot. The letter did not release plaintiff for work or suggest what jobs he might be able to perform or what accommodations might be required. On September 11, 1995, Toronzo responded to plaintiff's letter, stating that UPS could not consider any information provided because he was no longer an employee.

Plaintiff filed this action against UPS, claiming violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., Kentucky's equivalent provision, Ky. Rev. Stat. Ann. § 344.040, and § 510 of ERISA, 29 U.S.C. § 1140. Prior to trial UPS moved for summary judgment. The district court granted defendant's motion with regard to the ADA claims and the corresponding claims brought under Ky. Rev. Stat. Ann. § 344.040. The court found summary judgment was proper for three reasons. First, the court stated that plaintiff had not shown that he was a qualified individual with a disability, having never supplied any information concerning what accommodations he would require, what jobs he could perform, or even that he was released to return to work. Second, the court observed that an employer has a right to request reasonable medical information from an individual who claims a disability. The court noted that plaintiff failed to meet these requests over a period in excess of six months, not coming up with documentation for his disability until nearly three months after the deadline. Third, the court found that plaintiff made no showing of a causal connection between his disability and his delay in furnishing the requested information. Given plaintiff's repeated and long term consultation with medical professionals and the fact that he was represented by counsel, the court could not find a causal connection between plaintiff's disability and his failure to produce the requested medical information.

As to the plaintiff's ERISA § 510 claim, the court found defendant's initial argument, that plaintiff's claim should be dismissed on summary judgment for failure to exhaust administrative remedies, unavailing. Defendant then entered

a new motion for summary judgment, arguing that plaintiff had failed to state a prima facie case. The district court agreed, finding that plaintiff had produced no evidence showing it was defendant's specific intent to fire plaintiff to prevent him from receiving long term disability benefits due to him under ERISA. Further, the court found that even if the plaintiff did present a prima facie case, UPS had articulated a reasonable non-discriminatory grounds for terminating plaintiff—his failure to provide medical information concerning his eligibility for continued leave.

## II. Discussion

### A. Standard of Review

This court reviews a district court's grant of summary judgment de novo. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1176 (6th Cir.1996). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). A fact is material if its resolution will affect the outcome of the lawsuit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, "the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial," summary judgment should be granted. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987).

### B. Plaintiff's ADA Claim

The Americans with Disabilities Act provides that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

To state a claim under § 510, the plaintiff must show that an employer had a specific intent to violate ERISA. In the absence of direct evidence of such discriminatory intent, the plaintiff can state a prima facie case by showing the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.

*Id.* at 865 (internal citations and quotations omitted). Further, the *Smith v. Ameritech* Court found that in making its prima facie case, a plaintiff must show a causal link between pension benefits and the adverse employment decision. *Id.* This means that for plaintiff's case, "to survive a defendant's motion for summary judgment, plaintiff must come forward with evidence from which a reasonable jury could find that the defendant's desire to avoid pension liability was a determining factor in plaintiff's discharge." *Id.*

In the case at bar, the district court held that plaintiff failed to establish a prima facie case. In arriving at this conclusion, the district court emphasized the fact that, regardless of what UPS officials may have thought, termination was not a bar to the plaintiff applying for and receiving LTD benefits. Further, the court observed that there was no evidence that plaintiff had ever applied for LTD benefits, but had he applied, it would have been difficult to see how he would have qualified, given that he had represented himself as ready, willing, and able to work in his application for Washington State unemployment benefits.

Plaintiff disputes the district court's conclusion, stating that sufficient evidence existed in the record to create an issue of material fact as to whether defendant fired plaintiff out of a desire to avoid paying long term disability benefits. In support, plaintiff points to the fact that defendant knew that LTD was a possibility and had even estimated the cost to the company. Further, plaintiff claims that he asked for LTD forms in December of 1994 and asked Toronzo about the possibility of LTD in March of 1995, but was told he

*Corp.*, 87 F.3d 1167, 1169 (6th Cir. 1996) (holding that where plaintiff has failed to present any evidence of the expected duration of her impairment as of the date of her termination, a request for medical leave was unreasonable).

Because continued leave was an unreasonable accommodation, we find that the plaintiff's ADA claim and his claim under Kentucky's equivalent provision, Ky. Rev. Stat. Ann. § 344.040, were properly dismissed by the district court on defendant's motion for summary judgment.

### C. Plaintiff's ERISA Claim

Plaintiff also challenges the district court's grant of summary judgment regarding his claim that UPS violated ERISA § 510, 29 U.S.C. § 1140, by allegedly terminating him to avoid paying long term disability (LTD) benefits. ERISA § 510 makes it unlawful for an employer to:

discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140.  In *Smith v. Ameritech*, 129 F.3d 857 (6th Cir. 1997), this Circuit laid out the framework under which an ERISA § 510 claim should be analyzed, providing:

employer incurs additional administrative costs and more importantly is forced to shoulder long-term uncertainty regarding the composition of its work force.  Further, during the extended leave, the employee loses valuable work skills, and if the employee ever returns, he or she will likely require significant retraining.  When this is balanced against the potential benefit derived from the employee returning to work, which must be significantly discounted by the obvious indeterminacy involved, the cost exceeds the likely benefit.

42 U.S.C. § 12112.  Under the act, a qualified individual with a disability means, "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111.  The Act makes it clear that failure to accommodate an individual's disability may qualify as discrimination, defining the term "discriminate" to include:

not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . . .

42 U.S.C. § 12112 (b)(5)(A).

As an aid to determining whether a plaintiff has made the required showing of discrimination under § 12112, this Circuit has stated the required analysis in the form of a multifactor test.  To recover for discrimination under the Act, the plaintiff must show he or she: (1) is an individual with a disability; (2) is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) was discharged solely on account of the disability. *See Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996) (citing Maddox v. University of Tennessee, 62 F.3d 843, 846 (6th Cir. 1995), for its conclusion that the analysis of claims brought under the ADA roughly parallels that of claims brought under the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1995)). *Monette* further clarified the burdens placed on each party by this analysis, stating that if the plaintiff has direct evidence that the employer relied on his or her disability in making an adverse employment decision:

(1) The plaintiff bears the burden of establishing that he or she is disabled.  (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for

the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Monette*, 90 F.3d at 1186. When a plaintiff seeks to establish his or her case indirectly, however, the *Monette* court recognized that the traditional *McDonnell Douglas*[1] burden shifting approach continues to apply, stating:

> [P]laintiff may establish a prima facie case of discrimination by showing that: (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. The defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times.

*Id.* at 1186-87.

As an initial matter, it is not entirely clear whether plaintiff's ADA claim is based on direct or indirect evidence. Defendant claims to have fired plaintiff not because he was disabled, but rather because he failed to produce the medical documentation which UPS required for additional leave. In support, defendant points to the fact that it was prepared to

---

[1]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973).

and a half in length to be reasonable. However, we must still address the particular accommodation that plaintiff requested. *See Cehrs*, 155 F.3d at 782 (noting that the Supreme Court has made clear that individualized attention is essential in disability cases).

Plaintiff argues that while he was not specific in his request, he only needed ninety days for additional evaluation. However, plaintiff has made no credible showing why the nearly year and a half leave defendant gave him was somehow an inadequate period for him to obtain an evaluation. Further, the evaluation that plaintiff received from his homeopathic physician, months after his termination, still did not indicate a time frame or circumstances under which plaintiff could return to work. The ADA was designed to eliminate discrimination against individuals with disabilities so that they could become productive members of the workforce. *See* 42 U.S.C. § 12101; 29 C.F.R. pt.1630 (1996). However, when the requested accommodation has no reasonable prospect of allowing the individual to work in the identifiable future, it is objectively not an accommodation that the employer should be required to provide. *See* cases cited in *supra* note 4. We therefore hold that when, as here, an employer has already provided a substantial leave, an additional leave period of a significant duration, with no clear prospects for recovery, is an objectively unreasonable accommodation.[5] *Cf. Hudson v. MCI Telecommunications*

---

[5]Some Courts have explained the inquiry into the reasonableness of an accommodation as involving a benefit burden type analysis. *See Cehrs,* 155 F.3d at 781 (stating that plaintiff must show that the existence of a plausible accommodation which costs less than the benefits that would be received); *Monette*, 90 F.3d at 1184 (suggesting a cost-benefit analysis to determine whether a proposed accommodation is reasonable); *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir. 1995) (observing "it is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits."). Such an analysis could be employed here. When both the time and likelihood of return to work cannot be roughly quantified after a significant period of leave has already been granted, the costs of the requested additional leave outweigh the benefits. The

last medical evaluation which defendant received from a homeopathic physician, months after the deadline set by defendant, only contained a vague estimate of the date that plaintiff could return to his job as a pilot, placing it at one to three years in the future. Further, the letter did not release defendant for work or suggest what other jobs he might be able to perform or what accommodations might be required.

Our review of case law in this and other circuits disclosed no cases where an employer was required to allow an employee to take a leave of absence for well in excess of a year—let alone indefinitely—as a reasonable accommodation to the employee's disability.[4] This suggests that it would be very unlikely for a request for medical leave exceeding a year

---

[4]*See, e.g., Nowak v. St. Rita High School*, 142 F.3d 999, 1004 (7th Cir. 1998) (finding that, "[t]he ADA does not require an employer to accommodate an employee who suffers from a prolonged illness by allowing him an indefinite leave of absence."); *Ralph v. Lucent Techs.,* 135 F.3d 166, 172 (1st Cir. 1998) (reviewing a preliminary injunction granted by the district court and agreeing with the court's decision that a very limited four weeks leave time might be required as a reasonable accommodation, even after plaintiff had been given 52 weeks of leave with pay); *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1225-26 (11th Cir. 1997) (stating that where plaintiff had been on salary continuation for 10 months already, defendant had no obligation to maintain this benefit for the remaining two months the company allowed when the defendant could not show that he would likely be able to return to work at the end of this period); *Monette*, 90 F.3d 1173, 1187 (holding that it is not a reasonable accommodation to require employers to keep employees on medical leave indefinitely in the hope that a position that they can perform will come available); *Hudson v. MCI Telecommunications Corp.*, 87 F.3d 1167 (6th Cir. 1996) (finding that while a reasonable allowance of time for medical care may constitute a reasonable accommodation, defendant was not required to wait indefinitely for plaintiff, who had failed to present any evidence of expected return date at time of termination, to recover); *see also Micari v. Trans World Airlines*, 43 F. Supp.2d 275, 281-82 (E.D. NY. 1999) (observing that where medical leaves have stretched beyond one year, courts have found that an employee cannot perform the essential functions of his or her job as a matter of law); *Powers v. Polygram Holding*, 40 F. Supp.2d 195, 200 (S.D. NY. 1999) (noting that cases in which courts have concluded that the length of requested medical leave is an unreasonable accommodation as a matter of law usually involved requests for close to a year or more).

---

give plaintiff an alternate job as soon as it could determine what plaintiff's disability was. Plaintiff, on the other hand, claims that the reasonable accommodation which his disability required was additional time for evaluation and treatment, the very thing defendant was unwilling to give.[2]

However, regardless of whether the direct or indirect evidence test is used, plaintiff's claim must fail. As the *Monette* Court stated, the plaintiff bears the initial burden of establishing that the accommodation he or she seeks is reasonable. *Id.* at 1187; *c.f. Gaines v. Runyon*, 107 F.3d 1171, 1175–76 (6th Cir. 1997) (observing that in order for a plaintiff to establish a prima facie handicap discrimination case based on a failure to accommodate, plaintiff must show that he is a qualified individual with a handicap, i.e., "[one] who, with or without *reasonable* accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others . . . ."). In *Monette*, the plaintiff proposed that as a possible accommodation he be kept on indefinite medical leave until another position opened up. The court concluded:

> [E]mployers simply are not required to keep an employee on staff indefinitely in the hope that some position may become available some time in the future. Moreover, employers are not required to create new positions for disabled employees in order to reasonably accommodate the disabled individual. Accordingly, Monette has failed to establish that his proposed accommodation is a "reasonable" one under the statute.

---

[2]*See Monette*, 90 F.3d at 1187 (finding in a failure to accommodate case that the defendant's explanation for the replacing plaintiff—that he was on medical leave, unable to perform his job, and was the only customer service representative in the building—was direct evidence that defendant relied on plaintiff's disabled status in replacing him); *but see Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 781 (6th Cir. 1998) (applying the *Monette* court's indirect evidence test in a case involving the termination of an employee for failure to properly fill out required company paperwork for an extended leave of absence).

*Id.* at 1187. The burden of establishing that the proposed accommodation is reasonable remains with the plaintiff, regardless of whether plaintiff has direct or indirect evidence in support of his or her ADA claim. *See Id.* at 1883,1186-87. This logically flows from the fact that the plaintiff is always required to show that he or she is qualified for the position, with or without reasonable accommodation. *See* 42 U.S.C. § 12112(b)(5)(A).

Because it is clear that in this case, plaintiff's request for additional leave was not a reasonable accommodation, we must affirm the district court. Plaintiff was given a year of paid disability leave by UPS. Following that leave, plaintiff was given more than six additional months of unpaid leave to provide UPS with information concerning his alleged disability. As the district court observed, no information was forthcoming, and plaintiff, who saw multiple doctors and was represented by counsel, made no showing that the delay was attributable to his disability.

Plaintiff claims that the accommodation he was asking for was more time for diagnosis and treatment by his doctors. It is possible that his June 5, 1995 phone call to Toronzo, requesting additional time for diagnosis would qualify as a request for accommodation. Plaintiff is also correct that this Circuit has recognized that a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances. *See, e.g., Cehrs v. Northeast Ohio Alzheimer's Research Institute*, 155 F.3d 775 (6th Cir. 1998), (finding a genuine issue of material fact as to whether an eight-week leave of absence followed by a request for an additional one-month leave was a reasonable accommodation under the ADA). However, plaintiff's request, to the extent it was made, was unreasonable.

Plaintiff attempts to rely on *Cehrs* for the proposition that an indefinite leave of absence, no matter how potentially lengthy, can never be found to be objectively unreasonable. We disagree with plaintiff's reading of *Cehrs*. In *Cehrs*, the plaintiff had just taken a roughly eight week leave of absence

for treatment of her Psoriasis. At the end of this period, plaintiff's physician determined that another months treatment was needed, and estimated that plaintiff could return to work on a part time basis by March 1, 1994. *Id.* at 778. The defendant ostensibly denied the request because the plaintiff had not properly filled out the required paperwork. Observing that the defendant had allowed other employees to take medical leave under similar circumstances, the court found that a genuine issue of fact existed as to whether the granting of further medical leave would unduly burden the defendant, or would have constituted a reasonable accommodation to the plaintiff.[3] *Id.* at 783.

Thus, the *Cehrs* Court was confronted with a situation where a request for a definite and relatively short leave was made, accompanied by a reasonable prospect of recovery. Clearly, the case at bar presents a much different scenario. In this case, plaintiff knew of his injury for years, was on salary continuation for a year, and unpaid medical leave for five months before being terminated. As noted above, even the

---

[3]Significantly, the Court's statements indicate that it believed that in some instances the employer would have the burden of showing that the employee's proposed accommodation was unreasonable. *See Cehrs*, 155 F.3d at 782-783 (discussing inquiry into the reasonableness of an accommodation in the same manner as the question of whether the proposed accommodation unduly burdens an employer). To the extent that the *Cehrs* Court suggested the employer must show that the accommodation proposed by the employee is unreasonable, it misread *Monette*. *Monette* makes it plain that whether a requested accommodation is reasonable and whether it unduly burdens the employer are separate inquiries. *See Monette*, 90 F.3d at 1183, 1184 n.10 and 1187. (stating the language of § 12112 makes it clear that while the employer has the burden of persuasion on whether an accommodation would impose an undue hardship, the disabled individual has the initial and separate burden of showing a proposed accommodation is objectively reasonable). The *Monette* Court did acknowledge that the inquiry into undue burden and reasonableness are similar. The Court distinguished them on the grounds that the inquiry into reasonableness requires, "a factual determination untethered to the defendant employer's particularized situation," whereas the question of whether a reasonable accommodation imposes an undue burden is evaluated with regard to "the employer's specific situation." *Id.* at 1184 n.10.