**William David HAGAN, Plaintiff,**

v.

**ANDERSON COUNTY FISCAL COURT, Defendant.**

**No. Civ.A. 99–11.**

United States District Court,
E.D. Kentucky,
Frankfort.

Aug. 3, 2000.

---

Willie E. Peale, Jr., Frankfort, KY, for William David Hagan.

Robert L. Chenoweth, Patricia T. Bausch, Chenoweth Law Office, Frankfort, KY, Betty A. Springate, Springate & Springate, Lawrenceburg, KY, for Anderson County Fiscal Court.

### MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

Defendant has filed a motion for summary judgment [Record No. 86], to which Plaintiff has responded [Record No. 92]. Defendant has replied [Record No. 94]. In addition, Plaintiff has filed a cross-motion for summary judgment [Record No. 79]. Defendant has responded [Record No. 93], to which the plaintiff has replied [Record No. 94]. Therefore, these matters are ripe for review.

**Standard of Review**

In determining whether to grant a motion for summary judgment, the Court must view the facts presented in a light most favorable to the non-moving party. *See Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 882 (6th Cir.1996). If the Court finds that there is no genuine issue of material fact, summary judgment may be granted. *See Street v. J.C. Bradford,* 886 F.2d 1472, 1479 (6th Cir.1989). The Sixth Circuit has held that "a party may move for summary judgment assert-

ing that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion." *Street*, 886 F.2d at 1478.

**Factual Background**

Plaintiff began his employment with Defendant Anderson County Fiscal Court in 1978 as a driver. He was promoted to the position of Emergency Medical Technician in late 1979 or early 1980. He continued in this position until 1982 when he left to work for Oscar Brown and Sons driving a grocery delivery truck. In 1985 he returned to work as an Emergency Medical Technician for defendant Anderson County Fiscal Court. That same year, Plaintiff was hospitalized due to his abuse of alcohol and drugs. After completing his treatment, Plaintiff returned to active employment. In 1993 he became a certified paramedic when the Anderson County Emergency Medical Service (ACEMS) went to Advanced Life Support Service. He continued in this position until March 27, 1997.

On March 27, 1997, Plaintiff contacted his immediate supervisor, Assistant Director James Ritchey. Plaintiff told Ritchey that he had again been abusing alcohol, had suicidal inclinations, and needed to seek treatment. Plaintiff was granted leave that afternoon to see a counselor. Later that day, Plaintiff again met with Ritchey and with the Director of ACEMS, Bobby Peach. The records appear to indicate that Peach, Ritchey, and Plaintiff agreed that Plaintiff was unable to continue working until he received more extensive treatment.

As Plaintiff felt that his suicidal inclinations made him unable to have access to the medications in his paramedics bag, he was placed on medical leave. Plaintiff had accrued 1,050 hours of medical leave. The parties involved determined that this was the best course of action as Plaintiff could not handle his job pressures without treatment.

The meetings held on March 27, 1997, were not the first indication of trouble. Plaintiff had a record of poor work perfor- mance in the months proceeding these meetings. ACEMS and its medical director, Dr. Jeffrey Rice, expressed the severity of their concerns in a letter dated November 17, 1996. The letter purported to be "the final warning" to Plaintiff. Defendant's motion, Attachment 3. This letter addressed two incidents in which Plaintiff allowed an Emergency Medical Technician to attend to a patient while Plaintiff drove the vehicle. The letter, signed by Ritchey and Peach, noted that this behavior created a "negligent situation" which "abandon[ed] your patient to a lower level of care." *Id.* The letter stated that this behavior was a "clear violation of agency policy and constitute[d] no less than open abandonment and neglect of duty." *Id.*

On April 15, 1997, Plaintiff filed his initial complaint with the Kentucky Commission on Human Rights and Equal Employment Opportunity Commission (EEOC), charge number 241–97–0591. In the beginning of May, Plaintiff obtained a hand written note from his counselor Marty Walker, which stated that Plaintiff was fit to return to work. As Plaintiff was fit to work, he could not longer receive payment for sick leave. Therefore, Defendant terminated his medical leave payments.

The next day, Dr. Jeffrey Rice wrote a letter that stated that he would not allow Plaintiff to return to work as a paramedic under his medical licensure. This letter was extremely significant as Kentucky law does not allow a paramedic to practice without the authority of the medical director of the service for which he worked. *See* KRS 311.654. Thereafter, Plaintiff filed a retaliation claim with the EEOC.

It is important to note that the defendant does not have the ability to require Dr. Rice to grant authority for Plaintiff to practice as a paramedic. Dr. Rice independently arrived at said determination, and the defendant does not have the power to override his decision. Even the plaintiff acknowledged the fact that the defendant was precluded from offering him employment as a paramedic without Dr. Rice's

approval. *See* Hagan Deposition, 4/12/00, p. 138–140. Plaintiff also admitted that the County Judge/Executive and the Fiscal Court could not have directed Dr. Rice to authorize Plaintiff's employment. *See Id.*

### Discussion: ADA Claims

The ADA protects a qualified individual with a disability. 42 U.S.C. § 12111(8) defines a qualified individual as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment...."

In this type of case, the plaintiff bears the burden of proof on a number of issues. First, Plaintiff must establish that he is disabled. *See Monette v. Electronic Data Systems Corporation,* 90 F.3d 1173, 1186 (6th Cir.1996). Second, Plaintiff must establish that he is "otherwise qualified for the position despite ... his disability." *Id.* Qualification requirements may be met "without accommodation by the employer", or "with an alleged 'essential' job requirement eliminated", or "with a proposed reasonable accommodation." *Id.* Only after the plaintiff has established these elements does the burden of proof shift to the defendant, who then must prove that the "challenged job criterion is essential" or that "a *proposed accommodation will impose an undue hardship on the employer.*" *Id.*

If the plaintiff does not meet both of the burdens of proof required under *Monette,* then the defendants will be granted summary judgment. This Court will focus on the second burden placed on the Plaintiff under *Monette.*

### Plaintiff is not "otherwise qualified" for the position.

■ Plaintiff cannot be defined as an "otherwise qualified" individual with a disability if he "cannot perform the essential functions" of his job "with or without a reasonable accommodation." *Bratten v.*

SSI *Services, Inc.,* 185 F.3d 625, 632 (6th Cir.1999). Under the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* (ADA), "an accommodation is not reasonable if it requires eliminating an essential element of a job." *Tuck v. HCA Health Services of Tennessee, Inc.,* 7 F.3d 465, 472 (6th Cir.1993). It is the plaintiff's burden to prove that he is qualified for his position, and that the accommodation is reasonable. In the case at bar, Plaintiff is unable to prove that he was qualified to be a paramedic for the defendant. In order to work as a paramedic, Plaintiff is statutorily required to have authorization from the medical director of the service. *See* KRS 311.654 [1]. Dr. Rice had withdrawn his authorization, and the defendant was without jurisdiction to require Dr. Rice to re-admit Plaintiff.

The statutory job requirement was clearly an essential function for the position of paramedic. As the statute was promulgated by the state legislature, the defendant had no authority to accommodate Plaintiff on this point. Plaintiff was not qualified for the position of paramedic, "with or without reasonable accommodation." 42 U.S.C. § 12111(8).

### Plaintiff is not "otherwise qualified" due to his misconduct

Plaintiff had been written up regarding two incidents in which he allowed an Emergency Medical Technician, a position with inferior training, to attend to patients that were his responsibility. After the "final" warning about this was issued in November of 1996, Plaintiff was charged with another incident regarding the same protocol error. The run sheets from November 1996 through March 1997 indicate that Plaintiff made many protocol errors, including failing to check glucose levels, and allowing an Emergency Medical Technician to be with the patient while Plaintiff

---

1. 2000 Ky Laws Reg. Sess. Ch. 343 § 21 (H.B.405) changed the law in this area. However, the statutes now distinctly define the issue in this case. Current statutes offer further support for the defendant's argument.

KRS 311.658 now specifically addresses the extensive practices that paramedics are permitted to engage in with the specific authorization of the medical director.

drove the emergency vehicle. *See* Hagan Deposition, 4/11/00 at 141–234, and 4/12/00 at 7–79. These incidents led the medical director, Dr. Rice, to rescind his authority which allowed Plaintiff to work under his medical license.

■ The assertion that Plaintiff was suspended from active duty as a result of misconduct is further evidenced by an agreed order entered on September 17, 1999 between Plaintiff and the Kentucky Board of Medical Licensure. The agreed order, signed by Plaintiff and his attorney, states that "there is a legal basis for the Board to proceed with a formal disciplinary proceeding against the paramedic certificate of William David Hagan pursuant to KRS 311.654 and 201 KAR 9:141, Section 1(1) and (17)." Defendant's motion, attachment 7. This signed statement acts as an acknowledgment that Plaintiff was not "otherwise qualified" to be a paramedic when he was placed on leave in March of 1997.

In addition, Plaintiff testified that, while he suffered from a disability caused by alcoholism, he believes that it did not affect his ability to perform his job. *See* Hagan Deposition, 4/28/00, Vol I, at 20, 84. Therefore, all protocol errors necessarily must have been due to his deficiencies, not his disability. However, 42 U.S.C. § 12114(c)(4) states that an employer "may hold an employee ... who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee." *Id.* Therefore, whether Plaintiff's protocol errors were the result of his incompetence, or his alcoholism, Defendant did not violate the ADA when Plaintiff was put on leave.

### Disparate Treatment

Plaintiff attempts to circumvent this argument by stating that two other employees, who also experienced protocol errors, were not placed on leave. Plaintiff attempts to create legal grounds for a disparate treatment case. However, the documentation produced by the plaintiff to bolster this claim only proves that Defendant treated Plaintiff equivalently to the employees in question.

The only documentation produced by Plaintiff to show support for this claim is a "quality improvement report" for Teresa Spaulding. Spaulding was counseled to "slow down, use common sense, and utilize the training that you have received." Plaintiff's motion, exhibit 18. Spaulding was counseled to "start to utilize myself [Bobby Peach] and the training staff to assist you more." Plaintiff also asserts that Defendant helped Spaulding to find another job. Clearly, this indicates that Spaulding committed protocol errors, an attempt was made to correct them, and Defendant ultimately helped Spaulding to locate other employment. The same story holds true for the plaintiff. He made numerous protocol errors, Defendant tried to correct them with written warnings, and ultimately offered to assist Plaintiff in locating another job. *See* letter from Thomas D. Cotton, dated May 12, 1997, Plaintiff's exhibit 5.

When comparing himself to employee Russ Greenwell, Plaintiff states that Greenwell's errors were remediated with retraining. This does not constitute a case of disparate treatment as Plaintiff was remediated with retraining and is now actively serving as a paramedic for the defendant.[2]

Plaintiff has not shouldered his burden of proof for a claim of disparate treatment. As Plaintiff has not produced "sufficient evidence" to "withstand a directed verdict motion," his claim will not stand. *Street,* 886 F.2d at 1478.

### Plaintiff is not "otherwise qualified" with proposed reasonable accommodation

In a letter dated June 10, 1997, Plaintiff suggests that he be allowed to return to

2. Dr. Rice is no longer Medical Director at ACEMS. Plaintiff has been given authority to work under the current medical director's medical license at this time.

work as an Emergency Medical Technician for a trial period of fourteen to thirty days. *See* Defendant's motion, Attachment 12. Plaintiff suggests that this is an accommodation that would allow him to return to "senior paramedic with the same pay, and status as before I was placed on leave . . ." *Id.* The Sixth Circuit has held that the plaintiff must prove that, "the proposed accommodation is reasonable . . . regardless of whether plaintiff has direct or indirect evidence in support of his or her ADA claim. This logically flows from the fact that the plaintiff is always required to show that he or she is qualified for the position, with or without reasonable accommodation." *Walsh v. United Parcel Service,* 201 F.3d 718, 725–26 (6th Cir. 2000).

The Sixth Circuit has held that, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Gantt v. Wilson Sporting Goods Company,* 143 F.3d 1042, 1046 (6th Cir.1998). In the case at bar, Plaintiff did not sufficiently make an adequate and specific request for accommodation [3].

■ A disabled employee "bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable." *Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 634 (6th Cir.1998). Here, Plaintiff's suggested accommodation does not remedy the fact that Dr. Rice had withdrawn his authorization for Plaintiff to continue his employment as a paramedic. A plaintiff "must identify the precise limitations and potential reasonable accommodations that could

overcome them." *Lurubbio v. Ohio Department of Transportation,* No. Civ. 98–3578, at 1999 WL 357758 at *2 (6th Cir. May 21, 1999) (unpublished).

■ This burden of proof is not difficult to fulfill; "[t]he employee's initial burden of articulating a reasonable accommodation need not be onerous. For the purposes of a prima facie showing, the plaintiff must merely suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 781 (6th Cir.1998). However, Plaintiff fails to carry this burden. In truth, this failure is not due to the fault or negligence of the plaintiff in submitting a specific or reasonable request. The simple fact is that no reasonable request can be made to circumvent a statutory mandate. Perhaps the plaintiff could have suggested an accommodation that placed him in another line of work within the defendant's jurisdiction, but the plaintiff made no such request. The defendant, in a letter dated June 12, 1997, Thomas Cotton, Anderson County Judge/Executive, suggested that Plaintiff could be considered for "alternative employment in Anderson County Government" once Plaintiff had completed the employee assistance program. Plaintiff's motion, Exhibit 7. However, Plaintiff never inquired about these potential opportunities.

Therefore, Plaintiff did not suggest any reasonable accommodations and did not attempt to investigate the accommodation suggested by Defendant. As Plaintiff has not fulfilled his initial burden of proposing

---

3. The Sixth Circuit requires a specific request for accommodation to trigger a plaintiff's rights. The best example of this standard is found in *Keys v. Joseph Beth Booksellers, Inc.,* No. Civ. 97–6511, 1999 WL 97003 (6th Cir. Feb.1, 1999) (unpublished). Here, the Court held that,

"The district court determined that Keys failed to satisfy his initial burden of proposing an accommodation because he neither asked to be accommodated nor suggested how Joseph Beth could have accommodated him. Keys argues that he did in fact

request an accommodation in the August 8, 1994, telephone conversations with Van Uum and Lark, his supervisors, in which he requested that they 'work with him' until he could get his condition under control. However, nowhere in the record or in the briefs does Keys even make a mention of a feasible accommodation. He simply relies on his 'work with me' request. This will not suffice. Accordingly, the district court did not err in granting summary judgment to Joseph Beth on Keys's ADA claim." *Id.* at *2.

an "objectively reasonable" accommodation, summary judgement cannot be granted to him. *Cassidy,* 138 F.3d at 634.

**Conclusion**

Plaintiff fails to carry his burden of proof on the second prong of the *Monette* requirement. *See Monette,* 90 F.3d at 1186. The plaintiff has been unable to produce evidence that he was "otherwise qualified" for his position. In addition, Plaintiff failed to satisfy his initial burden of suggesting an objectively reasonable accommodation. Therefore, Plaintiff is not afforded protection under the ADA and Plaintiff's claim fails as a matter of law.

Accordingly, **IT IS ORDERED:**

(1) That Defendant's motion for summary judgment be, and the same hereby is, **GRANTED;**

(2) That Plaintiff's motion for summary judgment be, and the same hereby is, **DENIED;**

(3) That this case be, and the same hereby is, **STRICKEN FROM THE ACTIVE DOCKET.**