DECISION AND JUDGMENT ENTRY
{¶ 1} David Foster appeals from a Jackson County Common Pleas Court judgment in favor of Foster's former employer, Jackson County Broadcasting, Inc. (hereinafter "JB"). Foster had his lower left leg amputated and missed a lot of work. Eventually, JB terminated him based on excessive absences. Foster filed a complaint against JB alleging two causes of action: (1) disability discrimination and (2) wrongful discharge. The trial court granted summary judgment in favor of JB. On appeal, Foster contends that the trial court erred because material facts remain in dispute. Because, in construing the evidence and all inferences therefrom in Foster's favor, we find that there is no genuine issue as to any material fact in the two causes of action; that JB is entitled *Page 2 
to judgment as a matter of law; and that reasonable minds can come to only one conclusion, and that conclusion is adverse to Foster, we disagree. Accordingly, we overrule Foster's assignment of error and affirm the judgment of the trial court.
 I. A. Summary Judgment Facts {¶ 2} JB hired Foster as a production associate in April of 2003 and terminated him in July of 2005. The facts leading to Foster's termination occurred in 2005. On April 21, Foster informed John Pelletier, a program director for JB, that he would undergo surgery on his foot and miss a week of work. On May 13, Foster contacted Pelletier to inform him that he was feeling sick and would miss his weekend shift. He further told Pelletier that his doctor scheduled his surgery for May 17. Pelletier stated that he contacted Foster on either May 17 or 18 to see how Foster's surgery went. On May 20, Foster informed Pelletier that he would return to work by the first of June. However, when Pelletier contacted Foster on May 27 to discuss Foster's return and scheduling matters, Foster informed Pelletier that he would miss another week of work.
 {¶ 3} On June 13, Pelletier contacted Foster to discuss Foster's health condition, and Foster informed him that he could not return to work at that time. When Jerry Mossbarger, JB's general manager, learned that Foster would not return to work as expected, he wrote Foster a letter. The letter informed Foster that he was eighteen-and-one-half days over his allotted time for absences, doctor appointments and vacation. Mossbarger further informed Foster that he would allow him to have eight-and-one-half days of paid absence beyond the usual thirteen days permitted per *Page 3 
employee, but that ten days of absence were considered unpaid. Mossbarger gave Foster unpaid leave until July 15. At the beginning of July, Foster informed Pelletier that he would return to work on July 5, but needed July 6, July 8, and July 20 off for follow-up appointments.
 {¶ 4} Foster did return to work on July 5. However, on July 21, Pelletier and Mossbarger learned that Foster had emergency surgery on his foot, including partial amputation. According to Foster, he needed the emergency surgery to amputate two gangrenous toes on his left foot. Foster underwent three additional surgeries between July 22 and August 1 to resolve the gangrene problem. The surgeries left Foster's left leg amputated up to four inches below his knee.
 {¶ 5} Pelletier spoke with Foster's wife on July 23 or July 24, and that he spoke with Foster on July 25, and they did not discuss an expected return to work date. Thereafter, Foster called Pelletier at home to discuss how things were at JB during his absence, but still never provided an estimated date of return. After that conversation with Foster, Pelletier attempted to contact Foster on at least two other occasions, but never received a return call.
 {¶ 6} On July 31, Mossbarger sent Foster a letter terminating his employment with JB. Foster received the letter on August 1. The letter states: "[JB] regrets your current physical challenges and wishes you a speedy recovery. The business requirements of a Radio Station necessitate the presence of a production professional on a consistent and constant basis. As a result, your employment with [JB] has been terminated effective your final day of work attendance which was Thursday, July 21, 2005." *Page 4 
 B. Statement of the Case and Appeal {¶ 7} In December, Foster filed a complaint in the Jackson County Court of Common Pleas against JB asserting disability discrimination pursuant to R.C. 4112.02 and wrongful discharge. Eventually, JB moved for summary judgment on both claims. The trial court granted summary judgment in favor of JB.
 {¶ 8} On appeal, Foster fails to specifically set forth an assignment of error. However, in the interests of justice, we have framed the following assignment of error: The trial court erred when it granted JB's motion for summary judgment because material facts remain in dispute.
 II. {¶ 9} Foster contends that the trial court erred when it granted summary judgment in favor of JB. Thus, our review is de novo. See, e.g.,Comer v. Risko, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 8.
 {¶ 10} Summary judgment is appropriate only when it has been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(A). SeeBostic v. Connor (1988), 37 Ohio St.3d 144, 146; Morehead v. Conley
(1991), 75 Ohio App.3d 409, 411. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. Doe v. First United MethodistChurch (1994), 68 Ohio St.3d 531, 535. *Page 5 
 {¶ 11} The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v.Burt (1996), 75 Ohio St.3d 280, 294, citing Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). See, also, Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 111; Dresher, at 294-295.
 {¶ 12} In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine if the opposing party can possibly prevail. Morehead, 75 Ohio App.3d at 411-412. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." Id. See, also, Schwartz v. Bank-One,Portsmouth, N.A. (1992), 84 Ohio App.3d 806, 809.
 {¶ 13} Pursuant to R.C. 4112.02(A), it is "an unlawful discriminatory practice * * * [f]or any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 14} This court has noted that "[t]o establish a R.C. 4112.02(A) cause of action for disability discrimination, a plaintiff must demonstrate that: (1) he or she is disabled; (2) *Page 6 
an employer took adverse employment action, at least in part, because the employee is disabled; and (3) the employee, though disabled, can safely and substantially perform the job's essential functions."Cooper v. Jones, Jackson App. No. 05CA7, 2006-Ohio-1770, ¶ 30, citingHood v. Diamond Products, Inc. (1996), 74 Ohio St.3d 298, paragraph one of the syllabus. With regard to the third element of the Hood test, plaintiff must show that he "can safely and substantially perform the essential functions of [his or] her job with or without reasonable accommodation." Miller v. Pond, 171 Ohio App.3d 347, 2007-Ohio-2084, ¶ 25, citing Columbus Civil Service Commission v. McGlone (1998),82 Ohio St.3d 569.
 {¶ 15} Where a plaintiff "establishes a prima facie case of disability discrimination, the burden shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken."Sicklesmith v. Chester Hoist, 169 Ohio App.3d 470, 2006-Ohio-6137, ¶ 97, citing Hood, supra. "[I]f the employer establishes a nondiscriminatory reason for the action taken, then the employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." Id.
 {¶ 16} Here, we only address the third element of the Hood test because it is dispositive.
 {¶ 17} Foster contends that, with a reasonable accommodation of more absences, he could adequately perform the essential functions of the job once he was fully rehabilitated. JB asserts that it is not required to provide an indefinite leave of absence to its employees. *Page 7 
 {¶ 18} We analyze Foster's disability discrimination claim under Ohio law in the same manner as disability discrimination claims under the federal Americans with Disabilities Act (hereinafter "ADA").Columbus Civ. Serv. Comm. v. McGlone (1998), 82 Ohio St.3d 569, 570. Stated differently, because the federal and Ohio laws are similar, we look to the federal cases interpreting the ADA in our interpretation of Ohio law. Id. at 573.
 {¶ 19} Federal courts, in determining whether an employee was "qualified to perform the essential functions of a job," have consistently held that where an employee has not been "released by her doctor to return to work, [the employee] has not met the * * * requirement that [the employee] be qualified to perform the essential functions of the job." Gantt v. Wilson Sporting Goods Co. (6th Cir., 1998), 143 F.3d 1042, 1047. In fact, federal courts hold that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a `qualified' individual protected by the ADA." Id., citing Tyndall v. National Educ. Ctrs. Inc., (4th Cir., 1994)31 F.3d 209; Carr v. Reno (D.C. Cir., 1994), 23 F.3d 525.
 {¶ 20} Here, at the time of Foster's termination, i.e., letter terminating his employment dated July 31, 2005, the record does not show that Foster's doctor released him to return to work. At that time, the record shows that Foster was unable to perform at least one essential function of his job, i.e., attendance, without a reasonable accommodation.
 {¶ 21} Courts have found that a medical leave of absence can be a reasonable accommodation in certain circumstances. Walsh v. UnitedStates Postal Service (6th *Page 8 
Cir., 2000), 201 F.3d 718, 726. However, courts also consistently hold that a "[r]easonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected."Gantt v. Wilson Sporting Goods Co. (6th Cir., 1998), 143 F.3d 1042,1047, citing Myers v. Hose (4th Cir., 1995), 50 F.3d 278; see, also,Kleiber v. Honda of America, Mfg., Inc. (S.D. Ohio, 2006),420 F.Supp.2d 809, 824; Lynch v. United States Postal Service (6th Cir., 2001), 3 Fed.Appx. 287, 289 (holding that "[indefinite leave is not a reasonable accommodation"); Walsh at 725-728.
 {¶ 22} Here, at the time of Foster's termination, it is undisputed that he was unable to work and there is no evidence that Foster informed JB of any specific or estimated return to work date. Pelletier testified that after July 25, he spoke to Foster one time, at which point a return to work date was not discussed. Further, Pelletier testified that he attempted to contact Foster at least twice thereafter and never received a return call from Foster or anyone on his behalf. Thus, at the time of Foster's termination, JB did not know when Foster could return to work.
 {¶ 23} In addition, the record does not show that Foster ever requested an extended leave of absence as a reasonable accommodation before JB terminated him. Moreover, a request for an indefinite leave of absence at the time of Foster's termination would have been an unreasonable accommodation. See Gantt at 1047. Thus, Foster has failed to demonstrate that he could "safely and substantially perform the job's essential functions" as required by the third element of theHood test. *Page 9 
Consequently, Foster failed to meet his initial burden of establishing a prima facie case of disability discrimination.
 {¶ 24} Therefore, in construing the evidence and all inferences therefrom in Foster's favor, we find that there is no genuine issue as to any material fact in his disability discrimination cause of action; that JB is entitled to judgment as a matter of law; and that reasonable minds can come to only one conclusion, and that conclusion is adverse to Foster.
 {¶ 25} Accordingly, we overrule Foster's assignment of error as it relates to his first cause of action, i.e., disability discrimination.
 III. {¶ 26} Finally, Foster argues about the propriety of the trial court's discussion regarding JB's post-termination offer to reemploy him and his purported return to work date set forth in an October 18 doctor's letter. Apparently, this argument is set forth by Foster in an effort to reverse the trial court's summary judgment against him on his claim of wrongful discharge.
 {¶ 27} Upon a review of Foster's complaint, it is clear that Foster contended in the trial court that JB's alleged discrimination against him on the basis of his disability amounted to a wrongful discharge. However, the trial court found, just as we find, that JB's action does not constitute disability discrimination. Further, Foster presented no argument in opposition to JB's motion for summary judgment on his wrongful discharge claim. *Page 10 
 {¶ 28} In addition, the trial court's discussion regarding JB's post-termination offer to reemploy him and his purported return to work date set forth in an October 18 doctor's letter was merely dicta. It was presented as an alternative finding, as evidenced by the language used by the trial court that JB's "action does not rise to the level of a violation of Ohio law. Even if termination of July 31, 2005 was improper, Defendant corrected this by offering to reemploy Plaintiff." Because the court's language was dicta, we do not address the propriety of the trial court's alternative finding.
 {¶ 29} Accordingly, we also overrule Foster's assignment of error as it relates to his second cause of action, i.e., wrongful discharge. Having overruled Foster's sole assignment of error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED, and Appellant pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. and McFarland, J.: Concur in Judgment Only.
 *Page 1