**Kimberly S. SHEPHERD, Plaintiff,**

v.

**HONDA OF AMERICA MFG., INC., Defendant.**

No. 2:99–CV–019.

United States District Court,
S.D. Ohio.
Eastern Division.

July 31, 2001.

Merl Harold Wayman, Columbus, OH, for Plaintiff.

Theodore P. Mattis, Mary Ellen Fairfield, Vorys, Sater, Seymour & Pease, Columbus, OH, for Defendant.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court on a number of post-Judgment motions. For the reasons that follow, the Defendant's Motion for Judgment as a Matter of Law (Doc. # 53) is denied; the Defendant's Motion for Stay of Execution of Judgment (Doc. # 54) is denied as moot; the Plaintiff's Motion to Amend the Judgment (Doc. # 55) is granted; and, the Plaintiff's Motion for Attorney's Fees, Expert Witness Fees and Costs (Doc. # 56) is granted in part and denied in part.

## I.

On September 25, 2000, Judgment was entered in the Plaintiff's favor following a jury verdict on her claim for disability discrimination pursuant to the Americans with Disabilities Act ["ADA"] and Ohio Revised Code Chapter 4112 and on her claim for discrimination under the Family Medical Leave Act ["FMLA"]. The Defendant now moves, pursuant to Fed.R.Civ.P. 50, for Judgment as a Matter of Law on these claims. Before addressing the merits of the Defendant's motion, the Court will briefly summarize the pertinent facts.

Plaintiff Kimberly Shepherd was employed by Defendant Honda of America Mfg., Inc. from March 4, 1985 until June 26, 1998. In December 1997, Dr. Stephen Polsley diagnosed Plaintiff as suffering from major clinical depression. Plaintiff testified at trial that from December 1997 to June 1998, she isolated herself from others and often did not leave her home. Plaintiff was on intermittent periods of leave until the last day on which she worked, May 22, 1998. As of June 6, 1998, Honda considered Plaintiff on an unauthorized leave of absence in violation of company policy for Plaintiff's failure to submit required documentation in support of further leave within fifteen days.

On June 19, 1998, the Defendant received a letter dated June 18 from Dr. Levy, requesting that Plaintiff receive family leave from June 1 to June 26, 1998 in order to regulate Plaintiff's medication for her recurrent depression. Both Drs. Polsley and Levy characterized Plaintiff's impairment, major depression, as severe in nature and impacting upon the performance of major life activities. On the same date of Defendant's receipt of the letter from Dr. Levy, June 19, 1998, Plaintiff was informed by the Defendant that her time away from work was under review and that she could be considered on an unauthorized leave of absence.

Plaintiff was terminated from employment on June 26, 1998 for failure to provide medical documentation in support of further leave time. The Defendant contends that the evidence at trial was undisputed that, as of June 26, 1998, Plaintiff was completely disabled for purposes of performing any type of work. Plaintiff disputes this characterization. Further, Plaintiff contended at trial that her disability prevented her from complying with the Defendant's requirements for supplying Defendant with documentation in support of further leave.

On July 6, 1998, Defendant received a June 30, 1998 letter from Dr. Polsley advising that Plaintiff's ability to comply with company rules and policies had been severely impaired by her major depression. Dr. Polsley requested that the Defendant allow Plaintiff to remain employed and on disability leave until her psychotherapy and medical treatment allow her to return to a better level of function. By the time Defendant received Dr. Polsley's June 30 letter, it had notified Plaintiff that she was terminated, subject to an appeal to a Honda Review Committee, which met on July 30, 1998 and affirmed the termination.

As of August 27, 1999, Dr. Levy was of the opinion that Plaintiff could not return to work for at least eighteen months; Dr. Levy further opined that Plaintiff could not return to full time employment for two years. This was not the case, however, at the time of Plaintiff's termination on June 26, 1998. At that time, Dr. Levy was of the opinion that Plaintiff's symptoms simply required an adjustment in medication and that a leave of twenty-five days would be sufficient.

## II.

### A. Defendant's Motion for Judgment as Matter of Law

Fed.R.Civ.P. 50 provides as follows:

**(a) Judgment as a Matter of Law**

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

**(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial.** If, for any reason, the court does not grant a motion for judgment as a matte of law made at the close of all the evidence, the court is considered to have submitted the action lot he jury subject to the court's later deciding the legal questions raised by the motion.

The movant may renew its request for judgment as a matter of law ....

Fed.R.Civ.P. 50(a), (b).

In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the United States Supreme Court held that "in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." In so doing, the Court is to draw all reasonable inferences in favor of the nonmoving party. Further, the Court must not make credibility determinations or weigh the evidence. *Id.* In sum, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* at 151, 120 S.Ct. 2097 (citation omitted). As the Sixth Circuit has stated, "[o]nly when it is clear that reasonable people could come to but one conclusion from the evidence should the court grant a motion for [judgment as a matter of law]." *Wayne v. Village of Sebring,* 36 F.3d 517, 525 (6th Cir.1994).

With this standard in mind, the Court will proceed to consider Defendant's Rule 50 motion. As a preliminary matter, however, the Court first considers Plaintiff's contention that the Defendant waived the majority of the arguments set forth in the post-verdict Rule 50 motion. Plaintiff asserts that, at trial, the Defendant's Rule 50 motion was only based on the assertion that Plaintiff was not a "qualified individual with a disability." In its present motion, the Defendant asserts that the evidence failed to show: (1) that Plaintiff was a qualified individual with a disability; (2) that Plaintiff was disabled; and (3) that Plaintiff requested a reasonable accommodation. Plaintiff also asserts that, with respect to Plaintiff's FMLA claim, the only

basis for a Rule 50 motion at trial was that Plaintiff failed to provide medical certification in support of further leave within fifteen days after having allegedly been given a leave recertification form.[1] In its present motion, the Defendant asserts that it is entitled to judgment in its favor on the FMLA claim because: (1) Plaintiff would not have been able to return to work at the expiration of her leave time and, (2) Plaintiff offered no proof of economic loss as a result of being denied further leave time.

■ As a general rule, if a party fails to move for judgment as a matter of law under Rule 50(a) on an issue at the conclusion of all the evidence, the party waives the right to file a Rule 50(b) motion. The rule serves two purposes: first, it enables the trial court to re-examine the sufficiency of the evidence and, second, it alerts the opposing party to the alleged insufficiency of the case prior to being submitted to the jury. *United States v. Flintco, Inc.*, 143 F.3d 955, 960 (5th Cir.1998). While there is no clear authority from the Sixth Circuit, other courts have taken a broad view as to what constitutes a sufficient predicate for a Rule 50(b) motion. *See* Moore's Federal Practice § 50.40[2] (3d ed.1999). In general, the rule is not rigidly applied if the grounds for the Rule 50(b) motion are closely related to those asserted in the Rule 50(a) motion. *Id.* at § 50.43[3][d].

In this case, the Court concludes that the basis for Defendant's present Rule 50 motion on Plaintiff's claims for disability discrimination under the ADA and § 4112 is closely related to the basis on which Defendant made its motion at trial. At trial, the Defendant argued that Plaintiff failed to present sufficient evidence that

she was a qualified individual with a disability. Defendant's Rule 50(b) motion simply addresses each element of this assertion; *i.e.*, whether Plaintiff was disabled; whether she was qualified; and whether she requested a reasonable accommodation. Plaintiff's assertion that the Defendant waived its present arguments is, therefore, without merit.

■ The Court also rejects Plaintiff's assertion that the Defendant failed to establish a proper predicate for a Rule 50 motion on Plaintiff's FMLA claim. As the Defendant points out, the Court directed Defense counsel to an issue not originally anticipated with respect to Plaintiff's FMLA claim. The Defendant had, however, stated to the Court that it had several bases for its Rule 50(a) motion. Thus, the Court rejects Plaintiff's argument that Defendant waived its right to assert the grounds for its present motion. With the waiver issue resolved, the Court will proceed to consider the merits of Defendant's Rule 50(b) motion with respect to each of Plaintiff's claims.

1. **Plaintiff's Claim for Disability Discrimination under the ADA and O.R.C. § 4112**

*Prima Facie case for disability discrimination*

The ADA prohibits certain employers from discriminating against a qualified individual with a disability because of the disability in regard to, *inter alia*, the discharge of the individual from employment. *See* 42 U.S.C. § 12112(a). The ADA further requires that employers "mak[e] reasonable accommodations to the known

---

1. At trial, Cathy Edwards, leave coordinator for Defendant Honda, testified that she allegedly gave Plaintiff a re-certification form which was due back to Honda by June 5, 1998. (*See also Joint Exhibit 28*). On cross-examination, however, Ms. Edwards stated

that she never asked Plaintiff to come to her office to pick up the form; rather, she simply directed Plaintiff to supply medical documentation in support of further leave time. Plaintiff testified that she was never given a re-certification form.

physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose and undue hardship on the operation of the [employer's] business." 42 U.S.C. § 12112(b)(5)(A). A "reasonable accommodation" may include "job restructuring, part-time or modified work schedules ... and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). A disabled individual is "otherwise qualified" if he or she "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A person is "disabled" for purposes of the Act if she has a physical or mental impairment that substantially limits a major life activity. 42 U.S.C. § 12102(2).

▆▆▆▆ In order to prevail on a claim under the ADA, the Plaintiff must establish (1) that she is disabled, (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment action because of the disability. *McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 371 (6th Cir. 1997). The disabled individual "bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable." *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1183 (6th Cir.1996) (emphasis in original). If the employer claims that the accommodation would impose an undue hardship, then the employer must establish that fact. *Id.*

### *Whether Plaintiff was a "Qualified Individual with a Disability"*

▆▆▆▆ The Defendant first asserts that it is entitled to judgment in its favor because, at the time of her termination from employment, Plaintiff was not a "qualified individual with a disability" for purposes of the ADA and R.C. § 4112.[2] Specifically, the Defendant argues that, because the evidence at trial indicated that Plaintiff was indisputably unable to perform any type of work on the date of her separation, she could not be considered a "qualified" individual. Defendant further argues that the leave of absence which plaintiff necessitated due to her disability was, as a matter of law, not reasonable. Thus, the Defendant asserts that because Plaintiff could not perform the essential functions of her job with or without a reasonable accommodation, she was not a "qualified individual with a disability" on the date of her termination.

The Plaintiff disputes the Defendant's contention that Plaintiff was completely disabled from performing any type of work at the time of her termination from employment. Plaintiff argues that, in light of the testimony of her supervisor that she was performing her job satisfactorily, she was able to perform her job with or without an accommodation. Further, Plaintiff argues that Dr. Levy's written request that Plaintiff be extended leave until June 26, 1998 to adjust her medication constituted a request for a reasonable accommodation. Thus, according to Plaintiff there was sufficient evidence for the jury to find that Plaintiff was a qualified individual with a disability on the date of her termination.

The Court first observes that, contrary to Defendant's assertion, the evidence at

---

**2.** As both Plaintiff and Defendant correctly observe, whether a Plaintiff is a qualified individual with a disability must be assessed at the time the allegedly discriminatory act took place. *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 884 (6th Cir.1996).

trial was not undisputed that Plaintiff was unable to perform any type of work at the time she was terminated. Rather, Dr. Levy's June 18, 1998 letter to the Defendant indicated that Plaintiff needed a twenty-five calendar day leave of absence in order to adjust her medication. Further, Dr. Levy testified that such an adjustment would advance the prospect of Plaintiff being able to return to work. In addition, Plaintiff's supervisor testified that Plaintiff had performed her duties according to expectations. Thus, the Court finds sufficient evidence from which the jury could have concluded that Plaintiff was able to work on the date of her termination, with a short leave of absence to adjust her medication.

■ The Court must next consider Defendant's argument that the leave of absence Plaintiff necessitated was unreasonable as a matter of law. Defendant relies upon *Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir.2000), in support of this assertion. In *Walsh*, the Sixth Circuit concluded that, while a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances, "when ... an employer has already provided a substantial leave, an additional leave period of a significant duration, with no clear prospects for recovery, is an objectively unreasonable accommodation." *Id.* at 727. In that case, the Plaintiff, a commercial pilot for UPS, was on leave of absence for thirteen months due to a complications stemming from an automobile accident. At the end of this period, the Defendant requested further documentation of Plaintiff's ability to return to work, his medical condition and treatment. Plaintiff's physician responded by indicating that Plaintiff was ineligible to return to work as a pilot at that time due to chronic fatigue and pain; that there was no active treatment; and, that Plaintiff's condition was not expected to change for twelve to eighteen months.

The Defendant again requested more detail and Plaintiff's physician stated that Plaintiff should consult a specialist. Plaintiff did not consult a specialist and the Defendant notified Plaintiff that without further documentation of his condition he would be terminated from employment. Plaintiff was thereafter terminated in June 1995. Two months later, Plaintiff sought reinstatement with long-term disability benefits. Plaintiff also provided medical evidence that it would be one to three years before he could return to work as a pilot. The Defendant declined to consider Plaintiff's request.

In assessing whether Plaintiff's request for additional leave of twelve to eighteen months was reasonable, the Sixth Circuit noted that Plaintiff had already been given one year of paid leave time with an additional six months of unpaid leave to provide medical documentation in support of further leave time. There was, however, no further information provided and there was no evidence that Plaintiff's failure in that regard was attributable to his disability. Thus, the Sixth Circuit held that further leave time was not a reasonable accommodation. The Court stated that "when the requested accommodation has no reasonable prospect of allowing the individual to work in the identifiable future, it is objectively not an accommodation that the employer should be required to provide." *Walsh v. United Parcel Service*, 201 F.3d at 727.

The Defendant in this case argues that Plaintiff's request for accommodation is similar to that made by the Plaintiff in *Walsh* and is therefore unreasonable as a matter of law. This argument is misplaced. First, unlike *Walsh*, at the time of Plaintiff's termination, there was no evidence that Plaintiff required one year or more of additional leave time. Rather, the evidence which the Defendant possessed at

the time of termination, June 26, 1998, merely requested that Plaintiff be granted a twenty-five calendar day leave of absence in order to adjust her medication. Plaintiff was terminated on that same date. Thus, unlike the Defendant in *Walsh,* the Defendant herein terminated Plaintiff before allowing Plaintiff the opportunity to have her medical condition assessed. In addition, unlike *Walsh,* there was evidence presented from which to conclude that Plaintiff's disability had prevented her from failing to comply with the medical leave documentation requirements in mid June 1998. Thus, while the Defendant relies upon *Walsh* for the rule that an employer need not provide further leave when there is no reasonable prospect of the employee returning to work in the identifiable future, the evidence in this case, at the time of Plaintiff's termination, did not support application of this rule. Rather, the evidence revealed that Plaintiff was terminated before the prospect for her return to work could even be assessed.

The Court further notes that Defendant's reliance upon Dr. Levy's opinion that Plaintiff would need an additional eighteen months of disability leave is misplaced because this prospect was not revealed until *after* Plaintiff's termination. Furthermore, Plaintiff submitted evidence to the effect that the need for an additional eighteen months was attributable to the fact that her condition had worsened as a result of being discharged. Again, in considering whether an accommodation is reasonable, this Court looks to Plaintiff's status at the time of her termination, not Plaintiff's status after being terminated.

In reviewing the evidence presented, this Court concludes that there was sufficient evidence to support a finding that Plaintiff was a "qualified individual with a disability" at the time of her termination. To this extent, the Court rejects Defendant's assertion that it is entitled to judgment as a matter of law on Plaintiff's disability discrimination claim.

### Whether Plaintiff was Disabled for purposes of the ADA

■ The Defendant next contends that it is entitled to judgment as a matter of law because the evidence at trial established that Plaintiff's disability, *i.e.,* depression, was "merely a temporary, transitory condition...." (*Defendant's Motion* at 7). In support of this theory, Defendant relies on Dr. Levy's testimony that, if Plaintiff had not been terminated, she would have been able to return to work approximately four weeks after June 26, 1998. From this, the Defendant argues, Plaintiff's disability was necessarily temporary in nature.[3]

As stated *supra,* a person is disabled if she has "a physical or mental impairment that substantially limits one or more of the major life activities of the individual." 42 U.S.C. § 12102(2)(A). A "physical or mental impairment" is defined to include, *inter alia,* "[a]ny mental or psychological disorder ... emotional or mental illness ...." 29 C.F.R. § 1630.2(h)(2). A "major life activity" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). "Substantially limits" means that the individual is "unable to perform a major life activity that the average person in the general population can perform" or the individual is "[s]ignificantly restricted as to the condition, manner or duration

---

**3.** The Court notes that, to those uninitiated in the vagaries of the ADA, it might seem illogical that the Court first considers whether the Plaintiff was disabled for so long that she was no longer qualified for her position and next considers whether the Plaintiff's condition was too temporary to constitute a disability for purposes of the ADA.

under which an individual can perform a particular major life activity" when compared to the average member of the general population. 29 C.F.R. § 1630.2(j)(1)(i), (ii). Whether an impairment substantially limits a major life activity requires consideration of "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact or expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

█ As the Defendant points out, short-term, temporary restrictions are not substantially limiting for purposes of the ADA. A condition is temporary if, at the time of termination, the individual does not suffer any manifestation of the condition. In *Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir.1996), the Sixth Circuit held that the mere possibility a condition will recur or that further surgery may be needed in the future is not sufficient to establish that a condition which does not presently affect the individual's ability to work is substantially limiting. The plaintiff in that case underwent surgery for a kidney condition but, at the time of her termination, her kidney condition did not affect her ability to work. Thus, the Sixth Circuit held that the district court correctly concluded that the condition was not a disability.

Defendant in this case argues that since Plaintiff's physician testified that, had Plaintiff not been terminated, she would have been able to return to work in four weeks, her condition was merely temporary and did not constitute a disability. The Defendant's argument is misplaced and, is somewhat contradictory to its prior position, *i.e.*, that Plaintiff was not a qualified individual with a disability because her doctor had concluded that she required a long period of medical leave before being able to return to work.

While Defendant correctly notes Dr. Levy's opinion regarding Plaintiff's ability to return to work had she not been terminated, the testimony does not negate other evidence establishing that, at the time of termination, Plaintiff's impairment substantially limited her ability to work. Indeed, Plaintiff and her son testified that during the time Plaintiff was on leave, she isolated herself and did not leave her house. Further, Dr. Polsley opined that Plaintiff's symptoms affected her ability to comply with the Defendant's leave policies.

Thus, there was sufficient evidence from which the jury could that Plaintiff was substantially limited in her ability to work at the time she was terminated from employment. Such evidence is distinguishable from the evidence in cases such as *Roush* where the plaintiff was not substantially limited in a major life activity at the time of termination but faced the possibility of limitation in the future. While the Defendant speculates on Plaintiff's limitation had she not been terminated, it is the evidence that existed at the time Plaintiff was terminated that is dispositive of the issue of whether she was disabled. The Court finds that there was indeed sufficient evidence from which the jury could conclude Plaintiff was disabled on June 26, 1998. Thus, to this extent, Defendant's motion for judgment as a matter of law is without merit.

### *Whether Plaintiff Requested a Reasonable Accommodation*

█ The Defendant next contends that it is entitled to judgment as a matter of law because Plaintiff never requested a reasonable accommodation.

The last day which Plaintiff worked was May 22, 1998. The Defendant's leave policy required that, within fifteen days, Plaintiff was to submit documentation in support of further leave time. When such

documentation was not forthcoming by June 6, 1998, the Defendant considered Plaintiff on unauthorized leave of absence. On June 19, 1998, the Defendant received a June 18 letter from Dr. Levy requesting that Plaintiff be placed on medical leave from June 1 to June 26, 1998 to "regulate medication which currently is not adequate." Dr. Levy noted that Plaintiff's symptoms were "breaking through." (*Joint Exhibit 26*). Plaintiff was terminated on the same day on which her requested leave expired, *i.e.*, June 26, 1998. On July 6, 1998, the Defendant received a June 30 letter from Dr. Polsley stating that Plaintiff's "ability to comply with company rules and properly analyze options for off work slips and family leave has been severely impaired by her present mental status." (*Joint Exhibit 40*).

On July 7, 1998, Plaintiff wrote to Carolyn Shisler, acknowledging that she had the right to have her termination evaluated by a Review Panel comprised of Honda associates. (*Joint Exhibit 45*). Plaintiff appeared before the Review Panel on July 30, 1998. The Panel considered evidence presented by the Plaintiff, including Dr. Levy's June 30, 1998 letter stating that Plaintiff's ability to comply with Defendant's leave requirements had been severely impaired by her then current mental state. (*Joint Exhibit 40*). The Panel concluded, however, that reinstatement was not warranted. (*Joint Exhibit 49*).

The evidence at trial was in dispute as to whether Plaintiff was notified of the need to submit further documentation in support of leave within fifteen days. Plaintiff testified that Defendant's leave coordinator, Cathy Edwards, did not provide her with a leave certification form. Ms. Edwards testified that, although she spoke with Plaintiff on May 21, 1998 and informed her of the need to supply further documentation, her notes did not reflect any request that Plaintiff come to pick up a certification form. The Defendant notes that the evidence was undisputed that, in the past, Plaintiff was routinely granted leave upon submitting required documentation. The Defendant contends that since it was not aware until after Plaintiff was terminated that her condition affected her ability to comply with leave policies, that it could not have been required to accommodate her in that regard. Further, Defendant contends that since Plaintiff failed to submit documentation in support of further leave, the Defendant was justified in terminating Plaintiff.

■ Under the ADA, an employer is required to provide a reasonable accommodation to a qualified employee with a disability unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A). A "reasonable accommodation" includes, *inter alia*, a modification or adjustment "to the work environment or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(*o*)(1)(ii). The employee must establish that a reasonable accommodation is possible and that she is qualified for the position with such reasonable accommodation. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 n. 12 (6th Cir.1996). The employee's burden in this regard is not onerous. "[T]he plaintiff must merely 'suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed the benefits.'" *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 781 (6th Cir.1998), quoting *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2nd Cir.1995). Temporary leave may in-

deed constitute a reasonable accommodation.

In this case, the Court finds that there was sufficient evidence from which the jury could have concluded that Plaintiff requested a reasonable accommodation for her disability. In particular, the Defendant was aware by virtue of Dr. Levy's June 18 letter that Plaintiff required additional leave time until June 26 in order to adjust her medication. Although Defendant focuses on the fact that it was not notified until the July 6 letter, which followed Plaintiff's termination, that her condition contributed to her inability to comply fully with the leave policies, this fact is not dispositive of the issue. Plaintiff's burden was simply to request a reasonable accommodation, not necessarily to advise the Defendant of the source of her failure to comply with the leave procedures. Moreover, although Plaintiff was notified of her termination on June 26, 1998, the propriety of her removal was still subject to consideration by the associate Review Panel. It is undisputed that, when the Review Panel met, the Defendant was in receipt of Dr. Levy's June 30 letter stating that Plaintiff's condition affected her ability to comply with leave policies. Thus, the Court disagrees with the Defendant's assertion that it was unaware of the affect of Plaintiff's mental condition on her ability to comply with leave policies until it was too late to consider whether termination was warranted.

Moreover, as the Defendant acknowledges, whether Plaintiff was even given the requisite form for an additional fifteen days of leave in June of 1998 was an issue for resolution by the trier of fact. In sum, the Court finds sufficient evidence to support the jury's conclusion with respect to Plaintiff's request for a reasonable accommodation. To this extent, the Defendant's motion for judgment as a matter of law is not well-taken.

### 2. Plaintiff's Claim for Violation of the Family Medical Leave Act

The Defendant moves, pursuant to Rule 50, for Judgment as a Matter of Law on Plaintiff's claim under the FMLA on two grounds. First, the Defendant asserts that because Plaintiff was indisputably unable to work for a period exceeding twelve weeks in one year, she cannot pursue an FMLA claim as a matter of law. Second, the Defendant asserts that, even if it violated or interfered with Plaintiff's rights under the FMLA, Plaintiff suffered no economic damages as a result. The Court will consider each argument, in turn.

29 U.S.C. § 2612(a)(1)(D) provides that an eligible employee is entitled to a total of twelve workweeks of leave during any twelve month period on account of, *inter alia,* "a serious health condition that makes the employee unable to perform the functions of the position of such employee." An employee who secures leave under this section is entitled, upon return from such leave, to be restored to the position held. 29 U.S.C. § 2614(a)(1)(A).

In this case, it was undisputed that Plaintiff suffered from a serious health condition and that, as of her termination date, she had used fifty-four of the sixty days of leave to which she was entitled under the FMLA. The Court notes that the jury was instructed that if it found a violation of the FMLA it could only award damages based upon wages for six days. The Defendant argues that Plaintiff is not entitled to an award for violation of the FMLA in light of Dr. Levy's testimony that even if Plaintiff had not been terminated, she would not have been able to return to work for at least four weeks. The Defendant relies upon several cases in support of this argument.

In *Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 784 (6th Cir.1998), the Plaintiff's termination date

was disputed. Plaintiff argued that her termination date was effective prior to the time her FMLA leave expired; the Defendant contended that Plaintiff was terminated after the expiration of her leave time. It was, however, undisputed that on the date her leave time ran out, she was unable to return to work. Thus, the Sixth Circuit concluded that Plaintiff did not have a cognizable claim under the FMLA. In *Green v. Alcan Aluminum Corp.*, No. 98-3775, 1999 WL 1073686 (6th Cir. Nov.16, 1999), the plaintiff was terminated after the expiration of her FMLA leave time when it was undisputed that Plaintiff was unable to return to perform the essential functions of her position. *Accord Hicks v. Leroy's Jewelers, Inc.*, No. 98-6596, 2000 WL 1033029 (6th Cir. July 17, 2000).

These cases are distinguishable from the case at bar. In this case, Plaintiff was terminated before her leave expired. While Defendant contends that Plaintiff was unable to return to work as of the date of her termination, this assertion is based upon evidence revealed after Plaintiff was terminated. Furthermore, the evidence presented revealed that the termination further aggravated Plaintiff's mental condition. Thus, unlike the situation in *Cehrs* and the other cases upon which Defendant relies, the evidence herein did not undisputably indicate that Plaintiff was unable to return to work on the date she was terminated. Consequently, the Court concludes that there was sufficient evidence from which the jury could conclude that Plaintiff was unlawfully terminated before the expiration of her FMLA leave time.

The Defendant also contends that, even if Plaintiff's rights under the FMLA were violated, it is entitled to judgment as a matter of law because Plaintiff suffered no economic damages as a result of the denial of full leave time. The Defendant relies upon *Williams v. Toyota Motor Mfg., Kentucky, Inc.*, 224 F.3d 840 (6th Cir.2000), *cert. granted,* — U.S. —, 121 S.Ct. 1600, 149 L.Ed.2d 466 (April 16, 2001), in support of this assertion.

In *Williams,* there was affirmative evidence that on the date of her termination, the plaintiff was under a no work restriction which lasted for at least nine months following the termination. Further, the plaintiff pointed to no loss of economic benefit as a result of having been terminated within the twelve week FMLA leave period. The Court concluded that Plaintiff in that case could not recover under the FMLA. As Plaintiff herein points out, there was affirmative evidence in this case that as a result of having been terminated, Plaintiff lost her medical insurance and was unable to pay her medical and other bills. Thus, this Court concludes that the situation in *Williams* is distinguishable. Plaintiff presented sufficient evidence of economic loss as a result of having been terminated during her FMLA leave time. The Defendant's motion for judgment as a matter of law is, therefore, without merit.

In sum, this Court concludes that the Defendant is not entitled to judgment as a matter of law on any of the bases asserted. The Defendant's Motion to Stay Execution of Judgment pending disposition of the Rule 50(b) motion is denied as moot.

**B. Plaintiff's Motion to Amend Judgment**

Plaintiff moves, pursuant to Rule 59(e), to amend the Judgment awarding Plaintiff reinstatement to include Plaintiff's "original seniority date, retirement, pension, health insurance benefits and pay level" which she would have been entitled to in the absence of a discharge. (*Plaintiff's Motion to Amend* at 1). The Defendant opposes Plaintiff's motion on the basis that it is entitled to judgment as a matter of law. The Defendant acknowledges, however, that an Order of reinstatement car-

ries with it the requirement that a successful plaintiff receive all benefits she would have received in the absence of discrimination.

In light of the Court's disposition of Defendant's Rule 50 motion, the Court rejects Defendant's initial basis for opposing Plaintiff's Rule 59(e) motion. Since Defendant acknowledges that Plaintiff is to receive all benefits to which she would have been entitled in the absence of discharge, the Court DIRECTS Defendant to restore Plaintiff to her original seniority date, retirement, pension, health insurance benefits and pay level. Thus, the Court grants Plaintiff's Rule 59(e) motion.

## C. Plaintiff's Motion for Attorney's Fees, Expert Witness Fees and Costs

Plaintiff moves for an award of $42,172.50 in attorney's fees; $3,151.30 in expert witness fees; and $5,458.70 in litigation costs. The Defendant opposes Plaintiff's Motion on the basis that it is premature and on the basis that Plaintiff's request is excessive. In light of the Court's disposition of the Defendant's Rule 50 motion and Plaintiff's Rule 59(e) motion, the Defendant's argument on the basis of prematurity is without merit. Thus, the Court will consider whether the award Plaintiff seeks is excessive.

With respect to attorney's fees, both counsel agree that the lodestar method is the appropriate means of calculation. Plaintiff's counsel, whose hourly rate is $150.00, seeks reimbursement for the total

number of hours expended, which was 281.14 hours. Defense counsel does not challenge the reasonableness of opposing counsel's hourly rate. Defense counsel does, however, assert that total sum should be reduced in light of the result attained at trial.

In particular, the Defendant seeks to exclude reimbursement for time spent on Plaintiff's unsuccessful claim for intentional infliction of emotional distress as well as Plaintiff's request for punitive damages. Counsel acknowledges, however, that "it is not possible to determine the precise number of hours spent" by either attorney in this regard. (*Defendant's Memorandum contra* at 8). Thus, Defense counsel requests that this Court reduce the award by a reasonable percentage. Plaintiff's counsel asserts that no deduction should be made.

The primary concern in considering a motion for attorney's fees is that the award be reasonable. In other words, an award should adequately compensate counsel yet avoid producing a windfall to the lawyer. *Adcock–Ladd v. Sec. of Treasury,* 227 F.3d 343, 349 (6th Cir.2000) (citations omitted). In assessing the reasonableness of the fees, the Court should first ascertain counsel's lodestar, *i.e.,* the proven number of hours reasonably expended multiplied by the attorney's reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Court may adjust the lodestar "to reflect relevant considerations peculiar to the subject litigation." [4] 227 F.3d

---

4. The factors the Court may consider in this regard are:

    (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed v. Rhodes,* 179 F.3d 453, 471–72 n. 3 (6th Cir.1999), citing *Johnson v. Georgia*

at 349. Nonetheless, there is a "strong presumption" that a prevailing lawyer is entitled to his lodestar fee. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

■ In considering the Plaintiff's request for fees, the Court first concludes that counsel's hourly rate is reasonable given his experience and expertise. This Court has previously stated during trial that the attorneys on both sides were highly skilled, professional, and persuasive. The Court also concludes, however, that some reduction of the fees sought is warranted in light of Plaintiff's unsuccessful claim for intentional infliction of emotional distress.[5] It cannot be determined, with precision, the precise amount of time that was expended on the failed claim. The Court notes that no additional witnesses or documents, which were not offered in support of the successful claim, were produced as to the failed claim. Consequently, the Court concludes that only a slight reduction in the award is appropriate. The Court concludes that Plaintiff's counsel is entitled to a total award of attorney's fees in the amount of $41,000.00.

■ Plaintiff's counsel also seeks to payment for expert witness fees incurred, which Plaintiff's counsel represents as totaling $3,151.30. Dr. Levy's bill to Plaintiff's counsel totals $2,335.00; Mr. Brewer's bill totals $787.50. Thus, the Court calculates the total amount of expert witness fees at $3,122.50.

Defense counsel objects to an award of expert witness fees on the basis that neither 42 U.S.C. § 2000e–5(k) nor 42 U.S.C. § 12117(a) allow for such recovery. Defense counsel asserts that Plaintiff is only entitled to those fees normally taxable under Rule 54(d), *i.e.* $40.00 per witness. Defense counsel acknowledges, however, that 29 U.S.C. § 2617(a)(3) allows a prevailing plaintiff under the FMLA to tax a reasonable expert witness fee. Nonetheless, Defense counsel argues that Plaintiff is not entitled to recovery under this statute because there is no evidence to establish that the fees paid were in connection with Plaintiff's FMLA, as opposed to her ADA, claim. Furthermore, the Defendant contests the reasonableness of the fees incurred.

Plaintiff's counsel disputes the assertion that she is limited to recovery under Rule 54(d). As Plaintiff points out, 42 U.S.C. § 12217 provides ADA plaintiffs with "[t]he powers, remedies, and procedures set forth in" certain sections of the Civil Rights Act, including 42 U.S.C. § 2000e–5. In turn, § 2000e–5 provides that "[i]n any action or proceeding under this title, the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorneys fee (*including expert fees* ) as part of the costs." 42 U.S.C. § 2000e–5(k) (emphasis added); see also Benson v. Northwest Airlines, Inc., No. 4–95–581, 1997 WL 122897 (D.Minn. March 18, 1997) (awarding expert witness fees to successful ADA plaintiff). Thus, the Court rejects Defense counsel's assertion that Plaintiff cannot recover expert witness fees under the ADA.

The Court concludes that the amount Plaintiff seeks in reimbursement for expert witness fees is reasonable. Furthermore, the Court notes that, while the Defendant challenges the amount, Defendant offers no reason to support the argument that the fees are excessive. In light of Plaintiff's success on the merits of her ADA and FMLA claims, the Court con-

---

*Hwy. Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

5. The Court does not, however, conclude that a reduction is warranted for Plaintiff's failure to secure an award of punitive damages.

cludes that she is entitled to recover expert witness fees in the amount of $3,122.50.

 Finally, Plaintiff moves to recover costs associated with litigation. Plaintiff seeks $5,458.70 in this regard. Plaintiff's costs are comprised of the following: $150.00 filing fee; $929.92 witness fees (including subpoenas); $717.17 copying and exhibit preparation; $22.50 docket fees; $66.00 trial transcript; $3,573.11 costs incident to taking depositions. The Defendant opposes an award of costs until all post-Judgment motions and appeals have been resolved. The Plaintiff concurs with this position in light of S.D. Ohio Local Rule 54.1.[6] Consequently, the Plaintiff's motion for an award of costs is denied without prejudice to renewal following any appeal of this Court's decision on the post-Judgment motions.

### III.

In light of the foregoing, the Defendant's Motion for Judgment as a Matter of Law (Doc. # 53) is **DENIED**; the Defendant's Motion for Stay of Execution of Judgment (Doc. # 54) is **DENIED as moot**; the Plaintiff's Motion to Amend the Judgment (Doc. # 55) is **GRANTED**; and, the Plaintiff's Motion for Attorney's Fees, Expert Witness Fees and Costs (Doc. # 56) is **GRANTED in part and DENIED in part**, consistent with the foregoing.

The Plaintiff is hereby **AWARDED** attorney's fees in the amount of $41,000.00 and expert witness fees in the amount of $3,122.50. The Plaintiff's motion for costs is denied without prejudice to renewal following resolution of any appeal of this action. The Judgment is hereby **AMENDED** to reflect that Plaintiff's award of reinstatement is to include Plain-

tiff's original seniority date, retirement, pension, health insurance benefits and pay level.

**IT IS SO ORDERED.**

---

6. This rule provides that the bill of costs is to be served and filed within fourteen (14) days after the date when Judgment becomes final, which "ordinarily is the date on which any timely appeal should have been noticed, if one is not taken, or is the date on which the Judgment is final after all appeals." S.D. Ohio Local Rule 54.1(a).